**ROMICON, INC.**
**V.**
**L & J OF NEW ENGLAND, INC.**

**No. 8612**

District Court Department
Appellate Division, Northern District
Trial Court of the
Commonwealth of Massachusetts

**July 31, 1981**

Jerold N. Arnowitz, Esq., counsel for plaintiff

Charles B. Swartwood, III, Esq., counsel for defendant

## OPINION

FORTE, J. This is an action of contract wherein the plaintiff seeks recovery for the defendant's alleged breach of a contract to purchase machinery from the plaintiff by wrongfully cancelling said

contract.

At the trial there was evidence tending to establish the following:

On August 15, 1977 the plaintiff sent the defendant a letter enclosing a "formal" quotation #8750 containing the plaintiff's standard terms and conditions of sale, offering to sell defendant a used ultrafiltration system with a new recirculation pump for $6,400.00 with delivery to be four weeks after receipt of defendant's order.

On August 19, 1977 the defendant mailed its purchase order for the said used ultrafiltration system, with the notation "(t)his system is to be connected to the E-coat tank supplied by George Kock." The order also contained the following language—"Date required 9/19/77 . . . Important—Please notify us immediately if you are unable to ship complete order by date required."

On August 24, 1977 the plaintiff forwarded its forms labelled "customer acknowledgment". The plaintiff's form stated on its face:

Your purchase order is accepted subject to the prices in effect at the time of shipment and in accordance with the terms and conditions stated on the reverse side of this form, the terms and conditions being the same as those which were sent with Plaintiff's quotation. All orders shall not be deemed accepted until such acceptance is made in writing by us. Any objections by you to these terms and conditions should be brought to our attention immediately. Your failure to notify us immediately of any such objections will be deemed to be your acceptance of this acknowledgment to be the complete contract of sale between us superseding any inconsistent provisions of your purchase order or any other correspondence.

The reverse side of this "customer's acknowledgment" contains a group of "STANDARD TERMS AND CONDITIONS", including among others the following:

3. Neither party hereto shall be liable for any failure or delay in delivering, repairing, or replacing the equipment or any portion thereof if such failure or delay is due to fire, strike, labor controversy, inability to obtain labor, materials or components from usual sources of supply, government order, or any other cause or circumstance beyond the reasonable control of the party obligated to act; provided, however, that if any material called for hereunder is to be suspended or terminated for any reason, Buyer agrees to take delivery of and make payment for such material as has been completed and is in the process as of the date of termination.

Seller reserves the right at any time to allocate its supply available for sale among any or all purchasers on such basis as it may deem fair and practical without liability for any failure to deliver which may result from allocation.

8. Seller shall not be bound by any terms, provisions, or conditions relating to the sale or lease of equipment to Buyer other than those expressly provided for in Seller's invoice, written proposal, purchase order acknowledgment, lease, or this instrument, unless expressly assented to by Seller in writing. In the event that any provisions of Buyer's purchase order are inconsistent with any of the provisions of this instrument or of Seller's invoice, proposal, lease, or purchase order

acknowledgment, the provisions of this instrument or of Seller's invoice, proposal, lease or purchase order acknowledgment shall control.

The plaintiff's acknowledgment also contained on its face the provision: "Requested Shipping Date 12-16-77". The defendant received the acknowledgment and the plaintiff never received a written objection to its terms.

After August 24, 1977 the plaintiff ordered a new recirculation pump and did some work on the used ultrafiltration system which two years earlier it had manufactured for another corporation. The other customer had returned the system to the plaintiff after using it for a period of time.

Both prior to and after September 19, 1977, representatives of plaintiff and defendant conversed about delivery date of equipment. Defendant advised plaintiff that in order for defendant to qualify for an investment tax credit, its new electrocoat machine of which plaintiff's system was an integral part had to be in operation prior to the end of 1977. Plaintiff notified defendant that it had ordered and was waiting delivery of a new recirculation pump from one of plaintiff's usual sources of supply.

On December 6 and 9, 1977, the defendant inquired as to the delivery status of the machinery. The plaintiff advised that the new pump would not be shipped until December 22, 1977, but that it could immediately deliver the ultrafiltration system in a working order with the old pump to the defendant, and install the new pump without charge when it arrived.

By letter dated December 9, 1977, the defendant cancelled its order with the explanation that "as of December 9, 1977 the delay of the original order of August 19, 1977 has caused undue problems and expense. As a result of the lengthy delay and indefinite completed delivery date, we have made other arrangements for the ultrafiltration system, and thereby have no use for your system."

Plaintiff received the pump in January 1978 and although its invoice to defendant was dated December 12, 1978 this invoice was first forwarded to defendant by plaintiff's attached letter dated January 9, 1978.

After defendant failed to honor plaintiff's invoice plaintiff attempted to re-sell the complete unit with the new pump by notifying their customers of its availability for sale. To date plaintiff has been unable to sell the equipment and it remains at plaintiff's place of business.

At the close of the evidence the defendant filed the following requests for rulings:

1. That the documents submitted to the defendant on or about August 15, 1977 by W. James Allshouse constituted an offer to sell the goods listed on that document to the defendant. See Mass. Gen. Laws Chapter 106, sec. 2-205.

2. That the defendant's purchase order submitted to the plaintiff on or about August 19, 1977 constituted a valid acceptance of the offer submitted by W. James Allshouse to the defendant on or about August 15, 1977.

3. That the plaintiff breached its contract with the defendant by failing to deliver the goods on the date promised in its offer and accepted by the plaintiff in its purchase order.

4. The defendant's letter dated December 9, 1977 notifying the plaintiff that it no longer had any use for the goods in question was a justifiable revocation of acceptance due to the plaintiff's failure to make delivery. See Mass. Gen. Laws Ch. 106, sec. 2-711.

5. Defendant's letter dated December 9, 1977 constitutes a

retraction of any waiver of strict performance by the plaintiff of the delivery date specified in the defendant's purchase order and said retraction was not unjust in view of the fact that plaintiff had not materially changed its position in reliance on any such waiver. See Mass. Gen. Laws Ch. 106, sec. 2-290(5).

6. Plaintiff's communication entitled ''Customer Acknowledgment'' to defendant at most constituted a proposal to add additional terms to the contract already in existence, which terms never became part of the contract, as they were never accepted by the defendant.

7. Plaintiff's communication labeled ''Customer Acknowledgment'' to defendant did not operate as an acceptance of the defendant's purchase order, as the provisions of Paragraph 3, among others, stated conditions materially altering the obligation solely to the defendant's disadvantage. See **Roto-Lith, Limited vs. F. P. Bartlett and Co.,** (C.A. 1962) 297 F.2d 497.

8. Plaintiff's action is barred by the Statute of Frauds because the goods involved are more than $500.00 and there is no writing signed by the party against whom enforcement is sought sufficient to indicate that a contract for sale has been made between the parties. See Mass. Gen. Laws Ch. 106, sec. 2-201.

9. The provisions of Paragraph 3 of plaintiff's document labeled ''Customer Acknowledgment'' never became part of the contract because said provisions were proposals for additions to the contract which materially altered it and were never accepted by the defendant.

10. The provisions of plaintiff's documents labeled ''Customer Acknowledgment'' stating ''requested shipping date December 16, 1977'' never became part of any contract between plaintiff and defendant because such term was not in addition to the terms proposed by the plaintiff in its purchase order but rather were different terms never accepted by the defendant and therefore not part of the contract. See Comment 6 to Mass. Gen. Laws Ch. 106, sec. 2-207.

11. The provisions of Paragraph 3 relating to defendant's obligation to pay for such material as has been completed and is in process as of the date of termination are inapplicable as none of the material called for was especially manufactured for the defendant.

12. The provisions contained on plaintiff's ''Customer Acknowledgment'' stating that ''your failure to notify us immediately of any such objections will be deemed to be your acceptance of this acknowledgment to the complete contract of sale between us superseding any inconsistent provisions of your purchase order or any other correspondence ''is unconscionable and void''. See Mass. Gen. Laws Ch. 106, sec. 2-302.

13. By December 9, 1977 a reasonable time had elapsed for plaintiff to fulfill his delivery obligations and said obligations were not fulfilled by that date.

14. Plaintiff was never able to deliver during the period before December 16, 1977 the entire system ordered by the defendant and reported that fact to the

defendant thereby anticipatorily breaching the contract. See Mass. Gen. Laws Ch. 106, sec. 2-610. 15. Plaintiff's measure of damages is specified by Sec. 2-708 of Ch. 106 as an action for the price under Sec. 2-709 of Ch. 106 is not available because plaintiff has not shown that it was unable to resell the goods at a reasonable price or that an effort to resell the goods at a reasonable price would be unavailing.

The court denied each of the above requests, found for the plaintiff and filed the following findings:

A contractual relationship existed between the parties. Pursuant to the terms of the contract, the Plaintiff prepared for the Defendant a unit or system which was a custom-built piece of equipment. Time was not of the essence, under the terms of the contract, with regard to a delivery date to the Defendant.

The Court finds that on August 24, 1977, the Plaintiff notified the Defendant that shipment of the unit would be on December 16, 1977, and that the Defendant raised no objection to this date.

Therefore the Court finds that a letter written by the Defendant on December 9, 1977, by which letter the Defendant sought to cancel the contract, was ineffective as to cancellation because it was written more than three months after the Defendant was notified of the intended shipping date of December 16, 1977.

On the question of damages the Court finds that the Plaintiff is entitled to the full contract price because there was not and is not any alternative buyer nor market for this particular custom-built unit.

Judgment entered January 23, 1979 and on January 30, 1979 Defendant filed Motion to Alter Judgment Pursuant to Rule 59(e) Dist./Mun. Cts. R. Div. P. which was allowed February 16, 1979 and provides that Plaintiff is to deliver to Defendant the ultrafiltration system upon Defendant's payment to Plaintiff of the amount of the Judgment.

The report contained all the evidence material to the question presented.

The defendant claims to be aggrieved by the court's refusal to allow defendant's Request for Rulings Nos. 1 through 15.

**I. Offer and Acceptance—Requests 1 and 2**

Although the plaintiff's August 15, 1977 letter was an offer to sell, and Request #1 should have been granted, it was harmless error. However Request #2 was properly denied because it contained a new condition, to wit: unit to be adapted to connect to a Kock manufactured tank, and thus was a counter-offer which is an implied rejection of the original offer. **Henchey v. Rathbon,** 224 Mass. 209 (1916). The defendant's order of August 19, 1977, with the added term relating to the Kock tank may be deemed to be an offer accepted by the plaintiff on August 24, 1977 by the plaintiff's "Customer Acknowledgment".

**II. Additional Terms in Acceptance—Requests, 6, 7, 9, 12**

The defendant next contends, through requested rulings numbers 6, 7, 9 and 12, that the plaintiff's purchase acknowledgment form did not constitute a valid acceptance under G.L. c. 106 sec. 2-207 because it stated conditions materially altering the parties' agreement. As previously noted, the plaintiff's standard terms and conditions of sale were disclosed in its letter and quotation of August 15, 1977 to the defendant. The defendant's purchase order clearly states "Detailed description included in

Quotation #8740 on August 15, 1977.'' As such quotation and standard conditions were thus part of the defendant's offer, they cannot be deemed additional terms or material alterations when reiterated in the plaintiff's acknowledgment. The latter, as an expression of consent to the defendant's offer upon established terms, must be deemed a valid acceptance within the meaning of G.L. c. 106, sec. 2-207 giving rise to a contract.

### III. Additional Terms—Delivery Date—Request #10

The only major discrepancy in the parties' communications concerns the date of delivery of the merchandise. The plaintiff's proposal of December 16, 1977 would appear to be a term varying that suggested by the defendant. The inclusion of a different term does not, however, affect the validity of an acceptance or the formation of a contract where as here the plaintiff did not condition its acceptance upon the express consent of the defendant to this term. G.L. c. 106, sec. 2-207(1); **Steward Decatur Security Sys. v. Von Weise Gear Co.** 517 F.2d 1136, 1139 (8th Cir., 1975); **Rite Fabrics, Inc. v. Stafford-Higgins Co., Inc.,** 366 F. Supp. 1, 7 (S.D. N.Y., 1973). Language in the plaintiff's acknowledgment as to its acceptance being subject to all terms set forth on the reverse side of the form did not constitute a statement of such condition. **Dorton v. Collins & Aikman Co.,** 453 F.2d 1161, (6th Cir., 1972).

A separate issue arises, however, as to whether this different term became a binding element of the parties' agreement. Defendant's requested ruling number 10 seeks a determination that the plaintiff's proposed delivery date of December 16, 1977 was never accepted and thus not finalized as a contract provision. Ordinarily conflicting, as opposed to additional, terms will not be deemed part of an agreement unless expressly accepted by the adverse party. **Supak & Sons Mfgr. Co., Inc. v. Pervel Industries Inc.** 25 U.C.C. Rep. S. 1241 (4th Cir., 1979).

This result is not altered by a provision similar to that in the instant acknowledgment form requiring notice of objection from the offeror. Uniform Commercial Code Comment 6 to G.L. c. 106, sec. 2-207 states:

"Where clauses on confirming forms sent by both parties conflict each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself. As a result the requirement that there be notice of objection which is found in subsection (2) is satisfied and the conflicting terms do not become a part of the contract."

Thus it would appear that the plaintiff's proposed delivery date of December 16, 1977 did not become part of the parties' agreement. Conversely, the defendant's suggested date was equally ineffective as it was rejected by the plaintiff.

Although requested ruling number 10 should, therefore, have been allowed, its denial constituted harmless error herein. Where no date for delivery is specified in an agreement, a reasonable time becomes implied. G.L. c. 106, sec. 2-309(1); **Orr v. Keith,** 245 Mass. 35, 39 (1923). The defendant cannot claim the plaintiff breached its agreement by failure to deliver on either date, and the ruling sought in request number 10 is consequently irrelevant.

### IV. Failure to Deliver—Request 3 and 5

Requests #3 and #5 are based upon the proposition that the parties had agreed upon a delivery date of September 19, 1977. As stated in section III above, the parties did not agree upon a delivery date. In the absence of an agreed date for delivery, the delivery shall be within a reasonable time. G.L. c. 106 sec. 2-309(1). Therefore, there was no error in the denial of requests #3 and #5.

### V. Revocation of Acceptance—Request #4

There was no error in denial of this request because as has been stated above, the "acceptance" claimed by the defendant was a counter-offer accepted by the plaintiff.

## VI. Statute of Frauds—Request #8

The defendant's purchase order of August 19, 1977 and the plaintiff's "Customer Acknowledgment" of August 24, 1977 constitute sufficient written evidence of a contract to satisfy G.L. c. 106, sec. 2-201(1). Because (a) both were "merchants", G.L. c. 106, sec. 2-104(1), (b) the "customer acknowledgment" was sufficient against the sender, (c) the defendant upon receiving said acknowledgment had reason to know its full contents, and (d) the defendant did not send a written objection within ten (10) days, subsection I was satisfied. G.L. c. 106, sec. 2-201(2).

## VII. Anticipatory Breach—Request #14

The plaintiff's notice that delivery to it of the new pump was expected only one week after expected date of contract completion and its offer to deliver immediately a functioning system with an old pump (to be replaced by a new pump at no expense to the defendant) does not rise to the level of "an overt communication of intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance." Comment #1, G.L. c. 106 sec. 2-610.

Moreover, the parties agreed (see section II above of this opinion) to the plaintiff's "Standard Terms and Conditions". Number 3 of said terms expressly excused a delay in delivery resulting from "inability to obtain . . . materials or components from usual sources of supply." Therefore, the delay in shipment of the new pump would appear to be a temporary inability of this nature.

There was no error in denying request #14.

## VIII. Damages—Request #15

The trial judge's finding that no buyer or market existed for the goods in question was a permissible finding based upon the plaintiff's evidence as to its unsuccessful attempts to dispose of the equipment. Therefore, the facts contained in request #15 being inconsistent with the trial judge's finding, there was no error in the denial of this request.

## IX. Requests #11 and #13.

These requests call for findings of fact and as such the court was not required to rule.

However, there was sufficient evidence upon which the trial judge based his findings of fact which were inconsistent with the facts called for by requests #11 and #13.

There being no material error, the report is dismissed.

Elliott T. Cowdrey, P.J.
John P. Forte, J.